57 F.3d 1069
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Barbara Thompson INMAN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 94-3635.
 United States Court of Appeals, Sixth Circuit.
 June 9, 1995.
 
 Before: NELSON and DAUGHTREY, Circuit Judges, and HILLMAN, District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from a summary judgment in which the district court upheld a denial of Supplemental Security Income benefits by the Secretary of Health and Human Services. The judgment was entered on the recommendation of a magistrate judge, and the district judge, in accepting the recommendation, indicated that she was doing so without further review because the recommendation had not been objected to by either party.
 
 
 2
 On May 1, 1995, this court entered an order directing the plaintiff to show cause why the appeal should not be dismissed because of the failure to file timely objections to the report and recommendation of the magistrate judge. The plaintiff filed a satisfactory response, and we shall therefore decide the case on the merits.
 
 
 3
 Upon de novo review of the record as a whole, we conclude that no prejudicial legal error was committed in the administrative proceedings and that the administrative record contains substantial evidence to support the Secretary's determination that the plaintiff was not disabled. The judgment will therefore be affirmed.
 
 
 4
 An administrative law judge conducted a hearing and thereafter issued a 22-page decision concluding that the claimant, Barbara Thompson Inman, was not eligible for SSI benefits. The decision--which became the final decision of the Secretary after the Appeals Council denied review--contains a thorough and accurate review of the documentary medical evidence and of the testimony presented at the hearing.
 
 
 5
 The record establishes, the ALJ found, that Mrs. Inman--a "younger" woman who has not worked since the last of a series of back injuries sustained during 1988 in her work as a nurse's aide--"has severe acute or chronic low back strain or sprain; asthma and bronchitis; dysthymic disorder with elements of anxiety, depression and chronic pain syndrome; and, personality disorder with numerous features." The ALJ further found that Mrs. Inman's impairments did not meet or equal any of the impairment "listings" which, under the governing regulations, call for a finding of disability without consideration of vocational factors; that although Mrs. Inman is unable to perform her past relevant work as a nurse's aide, she has the capacity to perform light work that does not require more than occasional bending as long as the work is of a routine nature, in a low stress environment, and would not expose her to heavy concentrations of fumes or dust; and that jobs which Mrs. Inman can perform exist in significant numbers in northeastern Ohio, where she lives, and in the national economy.
 
 
 6
 In the proceedings before the magistrate judge Mrs. Inman contended that she met Listing 1.05C, which covers vertebrogenic disorders such as herniated nucleus pulposis and spinal stenosis. See 20 C.F.R. Pt. 404, Subpt. P,App. 1, Sec. 1.05C. The record does not demonstrate that she had a herniated disc or spinal stenosis, however--on the contrary, a CT scan was reported as negative, and x-rays of the lumbosacral spine showed that the heights of the vertebral bodies and intervertebral disc spaces were well maintained--and this argument has not been pressed on appeal. Neither does the plaintiff challenge the conclusion that she failed to meet any of the mental disorders listings. We note that this conclusion was fully supported by the testimony of the medical advisor who appeared at the hearing, Daniel E. Schweid, M.D.
 
 
 7
 The main argument presented here is that the ALJ erred as a matter of law in failing to give conclusive effect to certain opinions reported by Mrs. Inman's treating physicians, William Wasson, M.D., and Norman Lefkovitz, M.D. Dr. Wasson began seeing Mrs. Inman in March of 1989, some months after she stopped working at the nursing home where she was last employed. On June 28, 1989, he prepared a report for the Ohio workers' compensation authorities in which he expressed the opinion that Mrs. Inman could not lift over 10 pounds and was unable to return to work. Dr. Lefkovitz first evaluated her in May of 1991, and in July of that year he sent Mrs. Inman's lawyer a short letter stating, in conclusory terms, that "this patient is not capable of sustained remunerative employment based upon her medical conditions."
 
 
 8
 Dr. Wasson's report did not explain the basis for his conclusion that Mrs. Inman could not lift more than 10 pounds, and Dr. Schweid testified that there was not enough documentation to support such a conclusion. Mrs. Inman argues that Dr. Schweid, whose specialty is psychiatry, "is not qualified to testify as to claimant's physical impairments." We disagree. Dr. Schweid received an M.D. degree from Western Reserve University School of Medicine in 1965 and belongs to the American College of Physicians. He is certainly qualified to read and interpret medical records such as those at issue here and to explain their significance to the ALJ. That is what he did. In the context of the record as a whole, his testimony provides adequate support for the ALJ's decision to reject Dr. Wasson's view that Mrs. Inman could not lift more than 10 pounds.
 
 
 9
 As to Dr. Wasson's finding that Mrs. Inman was unable to return to work in June of 1989, the ALJ agreed that she was not able to return to the type of work she had been doing in the nursing home. After careful analysis of all of Dr. Wasson's reports, however, and taking into account the full medical record and the testimony provided by all of the witnesses at the hearing, the ALJ found that there was other work Mrs. Inman could do.
 
 
 10
 In making this finding, the ALJ did not overlook the views of Dr. Lefkovitz. Mrs. Inman was examined by Dr. Lefkovitz on May 9 and May 21, 1991. His impression, as recorded in a office note prepared at the time of the first of these visits, was that she had a chronic lumbosacral strain/sprain injury. He noted that she had been through a course of physical therapy "with some benefit," and that she "uses a TENS [transcutaneous electric nerve stimulator] unit and a back brace which help." He specifically indicated, as the ALJ noted, that while Mrs. Inman has decreased range of motion, there was no evidence of sensory changes or reflex abnormalities or muscle strength loss, and there was no impairment in her ability to walk on her heels and toes and to rise from a squatting position. As the ALJ also noted, Dr. Lefkovitz did not report any muscle atrophy.
 
 
 11
 Dr. Lefkovitz referred to Mrs. Inman's asthma and other medical conditions in expressing the opinion that she was "not capable of sustained remunerative employment." As the ALJ indicated, however, Dr. Lefkovitz does not appear to have attended Mrs. Inman for any condition other than her low back complaints. Dr. Philip White, a specialist in pulmonary disease, described her asthma as "very mild." It was also Dr. White's impression that "her lumbosacral spine [condition] was of a mild degree."
 
 
 12
 The ALJ carefully reviewed Mrs. Inman's hospital charts, which show a series of emergency room visits. After Mrs. Inman stopped doing heavy work at the nursing home and applied for SSI benefits, the ALJ observed, there was only one emergency room visit prompted by her back complaints--and such a visit, coupled with the relatively infrequent outpatient visits to Dr. Wasson and Dr. Lefkovitz, did not indicate debilitating pain. The ALJ pointed out, moreover, that the outpatient notes on Mrs. Inman's physical therapy show a number of missed visits, failure to perform the home exercises that had been prescribed for her, and performance of unauthorized exercise in the form of jogging.
 
 
 13
 Against the background described in the ALJ's decision, the ALJ was not bound by the treating physicians' opinions. See Cutlip v. Secretary of HHS, 25 F.3d 284, 287 (6th Cir.1994), and the cases there cited. The ALJ did not err, moreover, in his use of testimony presented by a vocational expert on the number of jobs Mrs. Inman could perform. The failure of the vocational expert to refer to the Dictionary of Occupational Titles does not necessitate an additional hearing.
 
 
 14
 The show cause order of May 1, 1995, is DISCHARGED, and the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Douglas W. Hillman, United States District Judge for the Western District of Michigan, sitting by designation